149 So.2d 290

**Matron THOMAS**

v.

**STATE.**

**6 Div. 884.**

Court of Appeals of Alabama.

Jan. 22, 1963.

Johnson & Randall, Oneonta, for appellant.

MacDonald Gallion, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Roy E. Hicks, Legal Research Aide, Montgomery, for the State.

PRICE, Presiding Judge.

This appellant and one Jerry Pate were indicted separately and by agreement were tried together. Both were convicted of the offense of possessing a still. Jerry Pate is not a party to this appeal.

The evidence for the state tends to show that several law enforcement officers watched a still site in Blount County in the afternoon and until 1:00 o'clock of July 24, 1961, and saw no one.

Early the next morning they traveled a mile and a half on the main dirt road, drove down an old logging road for a half a mile, stopped then walked through the woods for half a mile. They waited about an hour and a half and officers King and Howell decided to check the beer in the vat. After walking a hundred yards from the other officers they heard people talking and lay down in a logging road and looked down upon the defendants for fifteen or twenty minutes.

The apparatus the witnesses saw was a big vat with a hole in the top of it, a 4 by 4 by 12, quarter inch flat iron welded together. The capacity of the vat was eleven or twelve hundred gallons and it had in it about 1000 gallons of beer which contained alcohol. There were 35 or 40 jugs and the defendant Pate worked with them, lining them up, for ten or fifteen minutes. They also saw Pate damming up a branch by pulling a board across it.

This appellant drank beer from a little tin can, getting the beer out of the vat two or three times. After drinking the beer he took a pole lying across the still with a tow sack on the end of it and stirred the beer two or three minutes. He then put the cap back on the still, laid the stick over it, walked to the side of the still, picked up a shovel and shovelled dirt to put around the board Pate was placing in the branch. This board was some four and half feet long

with a hole in the center stuffed full of rags. The water was about an inch deep, two feet wide, and after it was dammed up it was about a foot deep and was running around the board.

Thomas then opened a can of vienna sausage, which he took from the top of the still, and he and Pate ate the sausage with mustard and crackers. When they had finished eating they came out onto the path and when they were within six feet the officers jumped up and said "Hold it." Thomas stood still but Pate ran and was captured.

There was a home made burner which could burn gasoline or diesel fuel, but the witnesses did not recall seeing any fuel nor a pressure pump or storage tank for fuel. There was a thumper keg with one pipe connected to it and four joints of two inch steam pipe about two and a half feet long lying on the ground. There were three elbows and maybe one was connected. There were also some empty jugs, cartons and a foot tub. A hole in a board is used for the end of the condenser spout and in an apparatus of that type the whiskey would come out the end of the radiator and through the hole in the board. One witness stated the still could have been hooked up and the steam line run through the water in the branch and when the steam hit the water it would condense and come out in liquid form but it would not produce anywhere near the quantity of whiskey it was supposed to produce. Both witnesses testified the apparatus they saw was the type of appliance generally used for and suitable to be used in the manufacture of prohibited liquors.

The witnesses testified they examined the Dodge truck defendants had left parked a quarter of a mile from the still on the logging road and found no sugar, worm, and no gasoline can. If a radiator or other type of condenser is used it is not necessary to have a worm, but they found no radiator or condenser.

The testimony of Pate and the defendant Thomas was to the effect that Thomas, a coon hunter with two old dogs and three puppies, had lost a puppy three nights before while hunting with his brother in the vicinity of the still and on the morning in question he gave Pate $2.00 for gasoline and Pate took him in his truck to look for the dog. While searching for the dog they saw a trail and followed it to the still. Thomas drank some of the beer and ate a can of vienna sausage which was lying on the ground on a piece of paper, washed the can in the branch and took a drink of water out of it. There was an old sack and a shovel on top of the vat. Thomas laid the shovel down and dipped one can of beer then took the shovel and stirred it and knocked the foam and stuff off the top and got more beer. He did not get a stick and stir the beer, and he did not take the shovel and dam up the water or throw any dirt next to the board. Pate did not eat any of the sausage and the only thing Thomas saw him do was take a drink of water from the branch. Defendant had never been to the still site before.

Pate testified he looked at the jugs and was curious about some boxes that were there and he raised the lid and found more jugs and he smelled of one to see if it had whiskey in it. There was a board in the branch and he stepped on it and it turned to the side and when it did witness squatted down and straightened the board.

■■■ It is well settled that the mere presence of a defendant at a still, without more, will not warrant a conviction for its possession, but any act of the defendant in or about the still which indicates an interest in it, or that he is aiding and abetting in its possession, may be taken as sufficient evidence upon which to base a verdict of guilty. Lock v. State, 21 Ala.App. 81, 105 So. 431; Rikard v. State, 31 Ala.App. 374, 18 So.2d 435; Vandiver v. State, 37 Ala. App. 526, 73 So.2d 566; Hudson v. State, 249 Ala. 372, 31 So.2d 774.

Section 132 of Title 29, Code 1940, provides that the unexplained possession of any part of any still, apparatus, or appliance, commonly or generally used for, or suitable to be used in the manufacture of prohibited liquors and beverages shall be prima facie evidence of violation of Section 131, Title 29, Code, supra.

The evidence adduced on the trial presented a jury question and was ample in its tendencies to sustain the judgment of conviction. There was no error in the refusal of the requested general affirmative charge nor in the denial of the motion for a new trial on the ground the verdict was contrary to the evidence.

■ For the purpose of explaining his having followed the logging road to the vat containing the beer the defendant was asked if it is customary for a lost dog to travel a road. Objection was sustained to the question and defendant was asked if he had lost dogs and seen lost dogs in the woods. Upon answering that he had, he was further asked if there was a road in the woods where he had seen lost dogs traveling. Objection was sustained to this question.

Counsel argues in brief that the defendant was qualified to testify as an expert as to the habits of lost dogs and that the court erred in sustaining objections to the foregoing questions. We do not agree. The question called for testimony which was manifestly incompetent and irrelevant and not material to the issues in the case.

■ The judgment of the court reads:

"It is therefore considered and adjudged by the court that the defendant is guilty of the offense of Possession of a Still as charged in Count II of the indictment *and that the State of Alabama for the use of Blount County have and recover of the defendant the costs of this prosecution* and that the defendant be imprisoned in the Penitentiary of this State for a period or term of one year and one day.".

Defense counsel insists the sentence is contrary to the provisions of Title 29, Section 134, Code of Alabama.

In sentences to the penitentiary there is no sentence to pay costs. Some sections of the Code dealing with the payment of costs whenever a defendant is convicted and sentenced to the penitentiary are: Title 11, Section 83, subdivision (d); Section 69, Title 45; Section 393, Title 15. See also White v. Lyon, 246 Ala. 279, 20 So.2d 523.

The italicized portion of the court's judgment is without authority of law, and is void, but is here regarded as mere surplusage and not to be considered a part of the sentence. The judgment is corrected in this respect. Weaver v. State, 1 Ala.App. 48, 55 So. 956; Chappell v. State, 19 Ala. App. 648, 100 So. 75.

As corrected the judgment is due to be and is,

Affirmed.